# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

OSWALDO CRUZ, MARY
MARTHA LITTLEJOHN, ROBERT
GREG WINN, and RANDALL S.
PRESTON, on behalf of themselves
and a class of those similarly situated,

           Plaintiffs,


v.                              **MEMORANDUM OF LAW & ORDER**
                                Civil File No. 08-5900 (MJD/JSM)


LAWSON SOFTWARE, INC.,
and LAWSON SOFTWARE
AMERICAS, INC.,

           Defendants.

_____

Charles V. Firth and Clayton D. Halunen, Halunen & Associates, and Christine E. Webber, Cohen Milstein Sellers & Toll PLLC, Counsel for Plaintiffs.

Brian T. Benkstein, Ruth S. Marcott, and Sara Gullickson McGrane, Felhaber Larson Fenlon & Vogt, PA, Counsel for Defendants.

_____


## I.      INTRODUCTION

      This matter is before the Court on Defendants' Second Motion to Dismiss.

[Docket No. 76]  Defendants move to dismiss Counts II and III of the Amended

Complaint (the Minnesota Fair Labor Standards Act ("MFLSA") claims).  The

Court heard oral argument on April 17, 2009.

## II.     BACKGROUND

### A.     Factual Background

Defendant Lawson Software, Inc., is a computer software and hardware

company that provides computer services throughout the United States and

internationally.  (Am. Compl. ¶ 11.)  Its headquarters are in St. Paul, Minnesota.

(Id.)  Lawson Software, Inc., is also known as Lawson Software Americas, Inc.,

(id. ¶ 5), and the parties collectively refer to Defendants as "Lawson."

Plaintiffs are former Lawson employees who were classified as exempt

from federal and state wage and overtime laws.  (Am. Compl. ¶¶ 6-9.)  Plaintiffs

claim that they should not be classified as exempt employees, so they are owed

compensation for overtime hours worked.

Named Plaintiff Oswaldo Cruz was employed by Lawson as a Technical

and/or Systems Consultant from April 2001 through November 2008.  (Am.

Compl. ¶ 6.)  He resides in New York and Florida.  (Id.)  Plaintiff Mary Martha

Littlejohn worked for Lawson from August 1998 until November 2007 as a

Business Consultant.  (Am. Compl. ¶ 7.)  She resides in New York.  (Id.)  Plaintiff

2

Robert Greg Winn worked for Lawson as a Technical and/or Systems Consultant from June 2004 until August 2008.  (Am. Compl. ¶ 8.)  He resides in Georgia. (Id.)  Plaintiff Randall S. Preston was employed by Lawson as a Business Consultant from November 2005 through October 2008.  (Am. Compl. ¶ 9.)  He resides in Washington.  (Id.)  There are no allegations in the Amended Complaint that any of the named Plaintiffs ever lived or worked in Minnesota at any time.

**B.    Procedural Background**

On May 20, 2008, Plaintiffs Oswaldo Cruz, Mary Martha Littlejohn, and Robert Greg Winn filed a Complaint against Defendants Lawson Software, Inc., and Lawson Software Americas, Inc.  The Complaint was filed in the Southern District of New York.  It alleged Count I: Violations of the Fair Labor Standards Act ("FLSA"); Count II: Violation of New York Labor Law § 650, et. seq., § 190, et. seq., and 12 N.Y.C.R.R. part 142; Count III: Violation of ERISA § 502(a)(3) Failure to Maintain Records; Count IV: Violation of ERISA § 1001, et. seq.; and Count V: Unjust Enrichment.

On October 28, 2008, the case was transferred from the Southern District of New York to this District.  [Docket No. 60]

On January 2, 2009, Plaintiffs Oswaldo Cruz, Mary Martha Littlejohn,

3

Robert Greg Winn, and Randall S. Preston filed an Amended Complaint against

Defendants Lawson Software, Inc., and Lawson Software Americas, Inc.  [Docket

No. 75]  The Amended Complaint alleges: Count I: Violations of the FLSA; Count

II: Violation of the MFLSA Overtime Requirements; Count III: Violation of the

MFLSA Record Keeping Requirement; Count IV: Violation of ERISA § 502(a)(3)

Failure to Maintain Records; Count V: Violation of ERISA § 1001, <u>et. seq.</u>; and

Count VI: Unjust Enrichment.

> Plaintiffs seek to
>
> bring this action pursuant to applicable state wage and hour laws, as
> described below, including, but not limited to, the MN FLSA, on
> behalf of all persons who were, are, or will be employed by Lawson
> nationwide as Applications Consultants, Software Consultants,
> Technical Consultants, Systems Consultants and/or Business
> Consultants (collectively, the State Law Class"), at any time within
> the applicable limitations period, and who were, are, or will be
> misclassified by Lawson as exempt from overtime under applicable
> law.

(Am. Compl. ¶¶ 15, 34.)  They also seek to bring this action on behalf of a similar

nationwide class under the FLSA, and a similar nationwide class for ERISA

claims. (Am. Compl. ¶¶ 14, 18.)

Plaintiffs assert that common questions of law and fact relate to whether

Lawson violated the MFLSA, including the following:

Whether Defendant violated the overtime compensation requirements of the Minnesota Fair Labor Standards Act, Minn. Stat. §177.25, by not paying Plaintiffs or members of the State Class for time worked in excess of 48 hours per week.

(Am. Compl. ¶ 38(a).)

Whether Plaintiffs and the State Law Class members are non-exempt employees entitled to overtime compensation for overtime hours worked under the overtime pay requirements of the MN FLSA.

(Id. ¶38(b).)

Whether Defendant's policy and practice of classifying the State Law Class members as exempt from overtime entitlement under Minnesota law and Lawson's policy and practice of failing to pay overtime to the State Law Class members violated applicable provisions of Minnesota law.

(Id. ¶ 38(c).)

Whether Defendant's actions violated the recordkeeping requirements of the Minnesota Fair Labor Standards Act, Minn. Stat., § 177.30, by failing to make and keep records of the time Plaintiffs and members of the State Law Class spend/spent performing required duties as well as of the time Plaintiffs and members of the State Law Class spend/spent working overtime hours.

(Id. ¶ 38(d).)

In Count II, Plaintiffs assert, "The MN FLSA, Minn. Stat. § 177.25, requires employers to pay employees one and one-half times the regular rate at which they are/were employed for all hours worked over forty-eight per work week."

5

(Am. Comp. ¶ 57.)  They further claim that Lawson violated the MFLSA "by regularly and repeatedly failing to compensate Plaintiffs and class members for the time spent on the work activities described in this First Amended Complaint."  (Id. ¶ 59.)

In Count III, Plaintiffs allege that "Minn. Stat. § 177.30 requires employers subject to the MN FLSA to make and keep a record of hours worked each day and each workweek by their employees," and that Lawson violated the MFLSA "by failing to make and keep records of the time Plaintiffs and class members spent performing duties as described in this First Amended Complaint."  (Am. Compl. ¶¶ 62-63.)

In response to Plaintiffs' Amended Complaint, Defendants filed this Second Motion to Dismiss, seeking dismissal of the MFLSA claims.

On March 31, 2009, this Court conditionally certified the FLSA class, dismissed the ERISA counts, and denied the motion to dismiss the claim for unjust enrichment.

## III.    DISCUSSION

Lawson argues that the named Plaintiffs do not have standing to bring the MFLSA claims because, since they have never lived or worked in Minnesota,

Minnesota law does not apply to them.

### A.    Legal Standard

Defendants move to dismiss the MFLSA claims based on lack of standing. They also assert that Plaintiffs have failed to state a claim upon which relief can be granted under Minnesota law.

"A plaintiff has the burden of establishing subject matter jurisdiction, for which standing is a prerequisite." Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006) (citations omitted).

> To establish standing, a plaintiff is required to show that he or she had suffered an injury in fact, meaning that the injury is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, the injury must be traceable to the defendant's challenged action. Third, it must be likely rather than speculative that a favorable decision will redress the injury.

Id. (citations omitted).

> In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.

Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted). In this case,

Defendants assert a facial challenge to Plaintiffs' standing.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.

> [T]he district court's grant of a motion to dismiss [is reviewed] *de novo*.  Dismissal is proper where the plaintiffs' complaint fails to state a claim upon which relief can be granted.  At this stage of the litigation, we accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief.  The plaintiffs need not provide specific facts in support of their allegations, but they must include sufficient factual information to provide the "grounds" on which the claim rests, and to raise a right to relief above a speculative level.

Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citations omitted).  "A motion to dismiss should be granted if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. "

Students for Sensible Drug Policy Found. v. Spellings, 523 F.3d 896, 899 (8th Cir. 2008) (citation omitted).  "While the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  Wiles v. Capitol

Indemnity Corp., 280 F.3d 868, 870 (8th Cir. 2002) (citation omitted).

**B.    Timing of Standing Decision**

The parties dispute whether the Court should address the question of

Article III standing before it rules on a yet-to-be-filed motion for class

certification of the State Law class.

Traditionally, standing is decided before a motion for class certification

because it is a jurisdictional question.  However, in two United States Supreme

Court cases addressing global settlements of asbestos cases, the Court held that

the issue of class certification should be decided before the issue of standing.  See

Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999) ("Ordinarily, of course, this or

any other Article III court must be sure of its own jurisdiction before getting to

the merits.  But the class certification issues are, as they were in Amchem,

'logically antecedent' to Article III concerns, and themselves pertain to statutory

standing, which may properly be treated before Article III standing.  Thus the

issue about Rule 23 certification should be treated first, 'mindful that [the Rule's]

requirements must be interpreted in keeping with Article III constraints . . . .'")

(citations omitted); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612 (1997)

("We agree that [t]he class certification issues are dispositive; because their

resolution here is logically antecedent to the existence of any Article III issues, it

is appropriate to reach them first.") (citations omitted).

Relying on Ortiz and Amchem, Plaintiffs argue that this Court should

delay addressing any standing question until it rules on Plaintiffs' future class

certification motion on the MFLSA claims.  See e.g., In re Buspirone Patent Litig.,

185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002) (deferring ruling on standing until after

deciding class certification motions because the "these alleged problems of

standing will not arise unless class certification is granted").

The Court concludes that it must decide the standing issue now before

deciding any possible future motion for class certification.  First, Ortiz and

Amchem addressed the special case of global settlement, which is not at issue

here.  See, e.g., In re Graphics Processing Units Antitrust Litig., 527 F. Supp. 2d

1011, 1026 (N.D. Cal. 2007) (holding "standing can be addressed before class

certification where, as here, the court is not considering a global class

settlement").

More importantly, any potential class certification decision will not

eliminate the standing issue that Lawson has asserted.  Here, unlike in the

Buspirone litigation, Lawson alleges that the named Plaintiffs do not have

standing at all to assert the MFLSA claims, which are the entire basis for Counts

II and III.  This problem will not potentially be solved by class certification,

because, while members of the class may have Minnesota connections, the named

Plaintiffs have asserted no state FLSA claims apart from the Minnesota claims.  If

the Court determines that Minnesota law does not apply to the named Plaintiffs,

the named Plaintiffs have no standing to assert any state FLSA claims, because no

other claims are alleged in the Amended Complaint.  See Simon v. Eastern Ky.

Welfare Rights Org., 426 U.S. 26, 40, n.20 (1976) (even named plaintiffs who

represent a class "must allege and show that they personally have been injured,

not that injury has been suffered by other, unidentified members of the class to

which they belong and which they purport to represent.) (citation omitted).  In

that case, the named Plaintiffs could not be appointed as class representatives

because, as the Amended Complaint is now pled, they could not assert **any** state

law FLSA claims on behalf of the proposed class and would be inadequate

representatives.  See Hall v. Lhaco, Inc., 140 F.3d 1190, 1196 (8th Cir. 1998)

(holding that a named plaintiff "is not a proper representative of the class where

he himself lacks standing to pursue the claim."); Parks v. Dick's Sporting Goods,

Inc., No. 05-CV-6590 (CJS), 2006 WL 1704477, at *3 (W.D.N.Y. June 15, 2006)

11

("[S]ince, . . . when considering standing, the Court must look at the named

plaintiff or plaintiffs, not the unnamed class members, and since here, there is

just one named plaintiff, who lacks either statutory or Article III standing to sue

for violations of state laws other than those of New York, the Court fails to see

what impact a motion for class certification would have on the pending

motion.").

The Court holds that it must address standing at this point in the litigation

because, unlike in other cases cited by Plaintiffs, here, if the named Plaintiffs do

not have standing to pursue the MFLSA claims, they have no state FLSA claims

left and their lack of individual standing cannot be revived by class certification.

Therefore, the Court now turns to the question of whether the named Plaintiffs

have standing to assert the MFLSA claims.

## C.    The Parties' Arguments

Lawson argues that the named Plaintiffs cannot satisfy Article III's

standing requirements because they have failed to plead any facts to show that

they are personally entitled to bring claims under the MFLSA.  The Amended

Complaint contains no allegations that any named Plaintiff worked in Minnesota

or resided in Minnesota.  The fact that there might be potential class members

who suffered injury under Minnesota law cannot establish standing for these named Plaintiffs.  See, e.g., In re G-Fees Antitrust Litig., 584 F. Supp. 2d 26, 36 (D.D.C. 2008) (dismissing state law class action claims based on the laws of states to which named plaintiffs had no connection because "named plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975)); Parks, 2006 WL 1704477, at *2 ("[T]he Court finds that the plaintiff, Daniel Parks, lacks standing to assert state-law [overtime] claims arising under the laws of states other than New York, since he was never employed by defendant anywhere other than New York.").

Plaintiffs assert that Lawson has strong ties to Minnesota.  They argue that Lawson is headquartered in Minnesota, where it develops and implements policies, keeps payroll information, has human resources and payroll, and makes decisions regarding employee benefits and exemption status.  Plaintiffs assert that more than half of Lawson's employees work out of its St. Paul, Minnesota, office.  They claim that they can show that Minnesota law applies to the nationwide class, including the named Plaintiffs.  Therefore, the Minnesota FLSA

13

exists as a potential remedy for Plaintiffs' and class members' injuries.

Plaintiffs assert that courts commonly apply the law of one state in class actions where the named plaintiffs assert claims on behalf of a class of individuals from numerous states other than the forum state. Plaintiffs cite to cases from various jurisdictions applying one state's law to a class consisting of plaintiffs from multiple states. However, the cited cases are not wage and hour cases. The Court must analyze whether the MFLSA, in particular, applies to the named Plaintiffs' claims.

Plaintiffs frame this question as a choice-of-law analysis. The Court concludes that a more accurate question is whether the MFLSA has extraterritorial application when there is no connection alleged between any employee and Minnesota, apart from the location of the employer's headquarters. However, even under a choice-of-law analysis, as set forth by Plaintiffs, the Court would conclude that Minnesota law cannot apply to the named Plaintiffs' claims.

### D.  Extraterritorial Application of the MFLSA

There is a general presumption that Minnesota statutes do not apply extraterritorially. In re Pratt, 18 N.W.2d 147, 153 (Minn. 1945), cited in Harrington v. Northwest Airlines, Inc., No. A03-192, 2003 WL 22016032, at *2 n.1

(Minn. Ct. App. Aug. 26, 2003) (unpublished) (noting that Minnesota courts

employ "the presumption against a state statute having extraterritorial

application").

> While protecting against the potential conflict of law that could arise
> if one state's statute were to be applied to persons within the borders
> of another state, such a presumption also serves 'to avoid running
> afoul of the Commerce Clause of the United States Constitution.'
> Indeed, the Minnesota legislature has overcome this presumption in
> the Worker's Compensation Act by specifically providing for its
> extraterritorial application.  See Minn. Stat. § 176.041, subd. 2
> (providing extraterritorial application for Minnesota employees who
> regularly perform duties in state but are injured out of state while
> working for same employer).

Arnold v. Cargill, Inc., No. Civ. 012086 (DWF/AJB), 2002 WL 1576141, at *2 (D.

Minn. July 15, 2002) (other citations omitted) (discussing the extraterritorial

application of Minnesota Human Rights Act ("MHRA")).

Unlike the Minnesota Worker's Compensation Act, the MFLSA does not

contain a provision explicitly extending extraterritorial application of the statute

to persons working outside of Minnesota.  Cf. Id. (finding no extraterritorial

application of the MHRA, when the MHRA "contains no such specific provision

extending the application of the statute to persons outside the borders of the

state.").  While the MFLSA's statement of purpose does not explicitly mention

any limitation to persons in Minnesota, <u>see</u> Minn. Stat. § 177.22, the statute does

grant the Commissioner the power to enforce the MFLSA by inspecting the place

of business and records "of any employer of employees working in the state."

Minn. Stat. § 177.27, subd. 1.  This language indicates the legislature's intent that

the statue apply only to employees working within Minnesota.  If the MFLSA

were meant to apply to any employer headquartered in Minnesota, regardless of

the location of its employees' work, then § 177.27, subdivision 1, would provide

that the Commissioner could enter and inspect the premises of any employer

located in the state.

     The courts of Minnesota agree that the MFLSA governs Minnesota

workers.  The Minnesota Supreme Court has recently held that the Minnesota

Payment of Wages Act ("PWA") and the MFLSA "together . . . provide a

comprehensive statutory scheme for wages and payment **in Minnesota**."  <u>Milner</u>

<u>v. Farmers Ins. Exchange</u>, 748 N.W.2d 608, 617 (Minn. 2008) (emphasis added).

<u>See also</u> <u>Meyer v. Best W. Seville Plaza Hotel</u>, 562 N.W.2d 690, 692 (Minn. Ct.

App. 1997) (noting that the MFLSA "govern[s] minimum wages **for Minnesota**

**workers**") (emphasis added).  There is simply no authority to apply the MFLSA

to Lawson employees who are not Minnesota residents and have not worked or

lived in Minnesota.  See, e.g., Priyanto v. M/S Amsterdam, No. CV 07-3811 AHM

(JTLx), 2009 WL 175739, at *8 (C.D. Cal. Jan. 23, 2009) ("This court has found no

decision applying any state's wage laws to nonresidents who did not work in the

state, regardless of the other contacts.  Courts interpreting other states' wage laws

have . . .  focused on the situs of an employee's work in determining if a wage

law applies, not where managerial decisions, actions, or inactions occur.").

Additionally, application of the MFLSA to Lawson employees who have never

worked or resided in Minnesota would raise troubling Commerce Clause issues.

See generally Mitchell v. Abercrombie & Fitch, No. C2-04-306, 2005 WL 1159412,

at *3-*4 (S.D. Ohio May 17, 2005) (discussing the burden upon interstate

commerce that would be imposed by application of the Ohio Minimum Fair

Wage Standards Act to all employees of an Ohio-based employee, even those

employee who do not work in Ohio).

The Court makes no determination as to what specific connection an

employee's work must have to Minnesota in order to fall under the coverage of

the MFLSA.  In this case, the Amended Complaint makes no allegation that the

named Plaintiffs were hired in Minnesota or ever worked in Minnesota.  The

Court simply concludes that the MFLSA does not apply extraterritorially to a

plaintiff who is not a resident of Minnesota and has neither lived nor worked in Minnesota. The MFLSA requires that covered employees, at a minimum, have some connection to Minnesota, beyond the location of the employer's headquarters. Because the Amended Complaint alleges no connection between the named Plaintiffs and Minnesota, beyond the location of Lawson's headquarters, the Court dismisses Counts II and III.

### E.      Choice of Law

The Court only reaches a choice-of-law analysis when the law alleged in the complaint could potentially apply. Here, the MFLSA does not apply to the named Plaintiffs, so there is no need to conduct a choice of law analysis. See Mitchell, 2005 WL 1159412, at *4 (declining to engage in choice-of-law analysis regarding application of Ohio Minimum Fair Wage Standards Act to the named plaintiff's work for an Ohio-based employer in Pennsylvania because the Ohio law did not apply extraterritorially and "[a] choice of law analysis assumes that a valid claim exists").

However, the Court notes that the result of the application of Minnesota's five-factor choice-of-law analysis offered by Plaintiffs would be consistent with the conclusion that the MFLSA does not apply extraterritorially. See Jepson v.

Gen. Cas. Co. of Wis., 513 N.W.2d 467, 469 (Minn. 1994).  Specifically, application

of the MFLSA in this case would not further predictability of results, as there is

no precedent for applying the wage laws of the state of an employer's

headquarters to employees with no connection to that state.  Application of the

MFLSA would be anomalous and controvert the predictability of established case

law.  Both employees and employers would face confusion regarding which

state's wage laws applies.

Similarly, application of the MFLSA to Lawson employees who are not

Minnesota residents and have neither worked nor lived in Minnesota would not

assist in maintenance of interstate order.  Choosing Minnesota law would not

foster respect for the interests of other states in protecting their own workers and

would impede interstate commerce.  It would raise the possibility that an

employer could locate its headquarters in a state with no state FLSA protection

and then ignore the higher protections offered in states such as Minnesota even

when its plant was located in Minnesota and employed Minnesotans to work in

exclusively in Minnesota.  Minnesota's interest in protecting its residents would

be thwarted if an employer could rely on the laws of the state where it is

headquartered, creating a class of Minnesotans, working in Minnesota, but not

subject to the MFLSA.

Moreover, the implementation of the forum state's interest weighs against invocation of the MFLSA in this case.  The primary purpose of the MFLSA is protect workers, rather than to regulate Minnesota-based companies.  <u>See</u> Minn. Stat. § 177.22 ("The purpose of the Minnesota Fair Labor Standards Act is (1) to establish minimum wage and overtime compensation standards that maintain workers' health, efficiency, and general well-being; (2) to safeguard existing minimum wage and overtime compensation standards that maintain workers' health, efficiency, and general well-being against the unfair competition of wage and hour standards that do not; and (3) to sustain purchasing power and increase employment opportunities.").  Minnesota surely has an interest in policing its corporations; however, the MFLSA's primary concern is the protection of Minnesota workers.  Applying the wage and hour laws of the headquarters of a corporation over the law of the state in which workers live and work could result in Minnesota workers working without the protection of the MFLSA, a result that would be contrary to Minnesota's goal.

## IV.   CONCLUSION

Because the Amended Complaint alleges no ties between the named

Plaintiffs' work and Minnesota, beyond Lawson's headquarters being located in

Minnesota, the Court holds that the MFLSA does not apply to the named

Plaintiffs' claims.  Therefore, they lack standing to assert these claims.  This

failure to state a claim under Minnesota law would not be remedied by class

certification.  In fact, because the named Plaintiffs' lack the ability to assert these

MFLSA claims, they would be inadequate representatives for their proposed

class of workers seeking to assert MFLSA claims.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

Defendants' Second Motion to Dismiss [Docket No. 76] is **GRANTED** and
Counts II and III of the Amended Complaint (the MFLSA claims) are
**DISMISSED**.

Dated:  May 21, 2009                            s/ Michael J. Davis
                                                Michael J. Davis
                                                Chief Judge
                                                United States District Court